# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

ELLIOT R. KOZEL, JERIMIE SANDERS, )
and MATTHEW KIELY, )
 )
        Plaintiffs, )
 )
  vs. ) Case No. 09 C 1145
 )
VILLAGE OF DOLTON, ROBERT SHAW, )
and ROBERT FOX, )
 )
        Defendants. )

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

    Elliot R. Kozel, Jerimie Sanders, and Matthew Kiely sued the Village of Dolton, Robert Shaw, and Robert Fox under 42 U.S.C. § 1983, contending that the defendants retaliated against them for exercising their First Amendment right of free speech. Kozel also asserts false arrest and state law malicious prosecution claims. The Court previously dismissed Kiely's claims. Defendants have now moved for summary judgment on the claims of Kozel and Sanders. For the reasons stated below, the Court grants defendants' motion on count two and count three as to defendant Robert Fox but otherwise denies the motion.

## Background

    Dolton is a municipality located in Cook County. Robert Fox is the chief of the Dolton Police Department. Robert Shaw was, at the time of the events giving rise to plaintiffs' claims, the inspector general of Dolton. He is also the brother of former

Dolton mayor William Shaw.  William Shaw died on November 26, 2008.  As a result, his mayoral seat was left vacant.

On December 6, 2008, plaintiffs and other individuals were circulating petitions for Riley Rogers, who was running to succeed William Shaw as mayor.  After arriving at Rogers' campaign headquarters at approximately 10:45 a.m., Kozel dropped Sanders and Kiely off in a residential area of Dolton to collect signatures.  Sanders and Kiely assert that after approximately an hour and a half, they saw a black sedan cut across oncoming traffic and drive toward them.  The sedan stopped approximately ten feet from where they were standing.  An African-American man, who plaintiffs contend was defendant Robert Fox, stepped out of the car and approached Sanders and Kiely.  Plaintiffs allege that the man had his hand inside of his sweatshirt, as if he was carrying a weapon.  The man asked them what they were doing.  Sanders and Kiely told him they were collecting petitions for Riley Rogers.  According to Sanders, the man responded by saying "Shaw not even dead good in the ground yet and y'all mother f**kers already out here petitioning for mayor."  Sanders Dep. 59:6-8.  The man then grabbed Sanders and Kiely's clipboards and the petitions they had gathered and wrote the name "Jill Shaw" on one of the petitions.  Sanders and Kiely took their petitions back from the man, who then left the scene in the black sedan.

Sanders called Kozel to report what had happened.  Kozel picked up Sanders and Kiely, who were were standing on a side street that ended in a cul-de-sac.  After Sanders and Kiely got into his car, Kozel called 911 and Riley Rogers.  Plaintiffs assert that the black sedan then returned to the scene, this time followed by a tan/gold car.  According to plaintiffs, these two vehicles cornered them in the cul-de-sac.  In order to

2

get past the vehicles, Kozel drove over grass on private lawns and then stopped his car a short distance away. Kozel exited his car and confronted the men in the other two vehicles. Robert Shaw then exited the tan/gold car. The parties dispute what happened next: Kozel contends that Shaw grabbed him, while Shaw contends that Kozel struck him.

Some time later, Officer Hope of the Dolton Police Department arrived on the scene. Kozel and Kiely testified at their depositions that Fox left the scene in the black sedan before Officer Hope arrived. Shaw told Officer Hope that Kozel had hit him. He asked Officer Hope to arrest Kozel, and Officer Hope did so. Shaw later filed a criminal complaint for battery against Kozel, but he failed to appear at the first court hearing on the charge. Kozel testified that Shaw's attorney appeared at the hearing and requested a continuance because Shaw had recently undergone surgery and was unable to come to court. The judge granted a short continuance. At the second hearing, however, Shaw's attorney appeared again and requested a second continuance. The judge then dismissed the complaint.

Plaintiffs filed the present action on February 23, 2009. Count one of plaintiffs' complaint is a First Amendment retaliation claim. Counts two and three are Kozel's false arrest and state law malicious prosecution claims. Count four is plaintiffs' state law claim for indemnification.

## Discussion

On a motion for summary judgment, the Court draws "all reasonable inferences from undisputed facts in favor of the nonmoving party and [views] the disputed evidence in the light most favorable to the nonmoving party." *Harney v. Speedway*

3

*SuperAmerica, LLC*, 526 F.3d 1099, 1104 (7th Cir. 2009).  Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Summary judgment is appropriate "where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

1. **Retaliation claim**

In count one, plaintiffs contend that defendants unlawfully retaliated against them because they "engaged in protected political speech on matters of public concern affecting residents of the Village of Dolton."  Pls.' Compl. ¶¶ 21-22.  In response, defendants contend that Kozel and Sanders were not engaged in protected political speech and that Kozel was properly arrested because he was operating his vehicle unlawfully.

"To establish a prima facie case of First Amendment retaliation, [a plaintiff] must establish that (1) it engaged in activity protected by the First Amendment, (2) it suffered a deprivation that would likely deter First Amendment activity in the future, and (3) the First Amendment activity was a 'at least a motivating factor' in the Defendants' decision to take the retaliatory action."  *Woodruff v. Mason*, 542 F.3d 545, (7th Cir. 2008) (quoting *Massey v. Johnson*, 457 F.3d 711, 716 (7th Cir. 2006)).  If a plaintiff can make this showing, "the burden then shifts to the defendants to produce evidence that they would have" taken the retaliatory action regardless of plaintiffs' actions.  *Massey*, 457 F.3d at 717.  "[A]ssuming the defendants carry that burden, the plaintiffs must then

persuade a fact-finder that the defendants' proffered reasons wee pretextual and that retaliatory animus was the real reason" for their actions. *Id.*

Based on the evidence before the Court, a reasonable jury could conclude that plaintiffs have met these requirements. On the "protected activity" part of the test, defendants concede in their statement of uncontested facts that "[o]n December 6, 2008, Elliott Kozel, Jerimie Sanders, Matt Kiely, and others were collecting petitions for Riley Rogers for the Village of Dolton mayoral race." Defs.' 56.1 Stmt. ¶ 8. Kozel's role was to aid in the petitioning process by driving Sanders and Kiely from one location to another. Defendants, without citation, argue that these actions are not protected by the First Amendment. But the process of "[p]etition circulation . . . is 'core political speech,' because it involves 'interactive communication concerning political change.'" *See Buckley v. Am. Constitutional Law Found., Inc.*, 525 U.S. 182, 186 (1999) (quoting *Meyer v. Grant*, 486 U.S. 414, 422 (1988)). Defendants also argue that Sanders was not engaged in protected speech because he was finished collecting petitions when the encounters with Fox and Shaw took place. But during his deposition, Sanders testified that he thought he and Kiely might have been going to another location to continue petitioning. Moreover, the encounter with Fox occurred while Sanders and Kiely were in the process of gathering signatures. On these facts, a reasonable jury could conclude that Kozel and Sanders were both engaged in protected speech.

A reasonable jury could find that Kozel and Sanders have met the remaining elements of a First Amendment retaliation claim as well. Plaintiffs allege that Fox approached them while pretending to have a weapon, aggressively challenged their right to collect signatures, and took away their clipboards and petitions before leaving

5

the scene. They also contend that Fox and Shaw cornered them in a cul-de-sac before Shaw grabbed Kozel by the collar. Based on these facts, a reasonable jury could find that defendants acted in a way that would be likely to deter future speech by plaintiffs. These facts are also sufficient for a jury to conclude that plaintiffs' petitioning was at least a motivating factor in defendants' alleged actions toward plaintiffs. These facts likewise give rise to a reasonable inference that defendants' stated reason for Kozel's arrest—his alleged assault on Shaw—is merely pretextual.

**2.     False arrest claim**

Kozel alleges in count two that defendants "falsely arrested and unlawfully detained [him] without legal justification," in violation of his Fourth Amendment rights. Pls.' Compl. ¶ 29. Defendants counter that Kozel's claims fail because Fox did not cause or participate in the arrest and Shaw had probable cause to believe that Kozel had committed a crime.

Kozel's claim against Fox fails as a matter of law. "Under any theory, to be liable under [section] 1983, the defendant must have 'caused or participated in a constitutional deprivation.'" *Pepper v. Vill. of Oak Park*, 430 F.3d 805, 810 (7th Cir. 2005) (quoting *Sheik-Abdi v. McClellan*, 37 F.3d 1240, 1248 (7th Cir. 1994)). As noted above, Kozel testified during his deposition that Fox left the scene before Officer Hope arrived and arrested Kozel. Kozel has offered no evidence that allows a reasonable inference that Fox caused or participated in Kozel's arrest. Fox's position as chief of police for the Dolton Police Department, standing alone, is not sufficient to give rise to such an inference. *See Morfin v. City of East Chicago*, 349 F.3d 989, 1001 (7th Cir.

6

2003) (noting that a police chief "cannot be liable for any constitutional violations committed by his officers simply by virtue of his supervisory role"). Given plaintiffs' testimony that Fox left the scene before Officer Hope arrived, there is also no basis for a reasonable jury to conclude that Fox "approved, condoned, or turned a blind eye" to Kozel's allegedly unlawful arrest. *Id.*

Kozel's false arrest claim against Shaw fares no better. "To prevail on a claim of false arrest, the plaintiff must show there was no probable cause for his arrest." *Jackson v. Parker*, 627 F.3d 634, 638 (7th Cir. 2010). "Probable cause requires more than a bare suspicion of activity, but it does not require evidence sufficient to support a conviction." *Holmes v. Hoffman Estates*, 511 F.3d 673, 679 (7th Cir. 2007). A court determines probable cause objectively, by "look[ing] at the conclusions that the arresting officer reasonably might have drawn from the information known to him rather than his subjective reasons for making the arrest." *Id.* In other words, the basis for the arrest "need not be the criminal offense as to which the known facts provide probable cause." *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004); *see also Williams v. Rodriguez*, 509 F.3d 392, 399 (7th Cir. 2007) ("[T]he issue is whether a reasonable officer, with the same information . . . would have had probable cause to arrest [the plaintiff] *for any offense."*) (emphasis added).

Plaintiffs concede that in order to get out of the cul-de-sac, Kozel drove off the road and onto the lawns of homes located in the cul-de-sac. They also admit that Shaw was in the tan/gold vehicle and stepped out of the car to confront Kozel after he did so. Given this, there is no genuine dispute of material fact as to whether Shaw had

7

probable cause to believe Kozel had committed a criminal act, whether that act was reckless driving or criminal damage to property. See 625 ILCS 5/11-503(a); 725 ILCS 5/21-1(1). Under *Devenpeck*, it is irrelevant that Kozel was arrested for, and charged with, a different crime. *Devenpeck*, 543 U.S. at 153 (rejecting "[t]he rule that the offense establishing probable cause must be 'closely related' to, and based on the same conduct as, the offense identified by the arresting officer at the time of arrest"). It is also immaterial that, as noted above, a reasonable jury could find that Shaw's proffered basis for Kozel's arrest was pretextual. Though a plaintiff can prevail on a retaliation claim by establishing pretext, the same is not true with regard to a Fourth Amendment false arrest claim. *See Edmond v. Goldsmith*, 183 F.3d 659, 665 (7th Cir. 1999) (citing *Whren v. United States*, 517 U.S. 806, 811-13 (1996)) ("[T]he motives of the officer carrying out the search or seizure are irrelevant" to determining whether the officer's actions were lawful).

In sum, even assuming that Shaw could otherwise be liable under section 1983 for directing Officer Hope to arrest Kozel, no reasonable juror could conclude that probable cause was lacking. *See Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001) ("If an officer has probable cause to believe that an individual has committed *even a very minor criminal offense* in his presence, he may, without violating the Fourth Amendment, arrest the offender") (emphasis added). Therefore, Kozel's false arrest claim against Shaw fails as a matter of law.

3. **Malicious prosecution claim**

In count three, Kozel contends that the defendants, by wrongfully arresting and

filing battery charges against him, are liable for malicious prosecution. Defendants argue that Fox cannot be liable because he did not initiate or participate in the criminal proceedings against Kozel. They also assert that Shaw cannot be liable because the charges against Kozel were not disposed of in a way indicative of Kozel's innocence.

Illinois law governs this issue. "To prove the tort of malicious prosecution, a plaintiff must demonstrate: (1) that defendants began or continued the original criminal proceeding; (2) plaintiff received a favorable termination; (3) probable cause did not exist; (4) malice was present; and (5) plaintiff suffered damages." *Aguirre v. City of Chicago*, 382 Ill. App. 3d 89, 96, 887 N.E.2d 656, 662 (2008) (citing *Swick v. Liautaud*, 169 Ill. 2d 504, 512, 662 N.E.2d 1238, 1242 (1996)). If any of these elements are not satisfied, the plaintiff cannot recover. *Id.* Though the existence of probable cause for any arrest bars a false arrest claim, in the malicious prosecution context the test for probable cause is proceeding-specific. *See Ritchey v. Maskin*, 71 Ill. 2d 470, 475, 376 N.E.2d 991, 993 (1978) (on a malicious prosecution claim, the question is whether there was "probable cause for *such proceeding*") (emphasis added). As such, a plaintiff can maintain a malicious prosecution action with respect to any charge for which there was no probable cause, even if there was probable cause as to a different charge.

For reasons similar to those discussed above with regard to Kozel's false arrest claim, the Court concludes that Fox cannot be liable for malicious prosecution. Kozel has offered no evidence that Fox was involved in charging him or continuing the prosecution. Rather, it was Shaw who asked Officer Hope to arrest Kozel and who signed the complaint against Kozel. Accordingly, no reasonable trier of fact could find that Fox initiated the proceedings against Kozel, or that Fox's "participation [was] of so

active and positive a character as to amount to advice and cooperation.'" *Fabiano v. City of Palos Hills*, 336 Ill. App. 3d 635, 647, 784 N.E.2d 258, 270 (2002) (quoting *Denton v. Allstate Ins. Co.*, 152 Ill. App. 3d 578, 583, 504 N.E.2d 756, 760 (1986)). Fox's conduct prior to Officer Hope's arrival—such as criticizing plaintiffs for petitioning and grabbing their clipboards—has no bearing on whether he initiated or participated in criminal proceedings against Kozel.

With regard to Kozel's claim against Shaw, however, summary judgment is not warranted because a reasonable trier of fact could conclude that the proceedings against Kozel were terminated in his favor. As defendants rightly acknowledge, "a malicious prosecution cannot be predicated on underlying criminal proceedings which were terminated in a manner not indicative of the innocence of the accused." *Swick*, 169 Ill. 2d at 512, 662 N.E.2d at 1242. Courts make this finding not by reference to "the *form* or *title* given to the disposition of the prior proceeding, but by the *circumstances* under which that disposition is obtained." *Cult Awareness Network v. Church of Scientology Int'l*, 177 Ill. 2d 267, 685 N.E.2d 1347, 1352-53 (1997) (emphasis in original).

Defendants argue that the judge dismissed Shaw's complaint against Kozel only because Shaw failed to appear in court, and thus no rational jury could find that the proceedings were terminated in a manner indicative of Kozel's innocence. A rational jury, however, could find that Shaw's failure to appear is indicative of Kozel's innocence because Shaw did not want to testify about the incident and be tested via cross-examination. As noted above, the parties present conflicting stories of what happened

10

when Kozel and Shaw confronted each other. A reasonable inference can be drawn that Shaw wished to avoid perjuring himself by appearing in court to defend his criminal complaint against Kozel. As such, a genuine issue of fact exists concerning whether Shaw's repeated failure to appear in court is indicative of Kozel's innocence or Shaw's own reluctance to testify.

### 4. Indemnification claim

Count four of plaintiffs' complaint is a state law indemnification claim against Dolton. The parties have presented no argument on this claim. Therefore, the Court declines to enter summary judgment on count four.

## Conclusion

For the reasons stated above, the Court grants in part and denies in part defendants' motion for summary judgment [docket no. 74]. Summary judgment is granted with respect to count two and count three as to Robert Fox. The Court otherwise denies defendants' motion. The case is set for a status hearing on April 26, 2011 at 9:30 a.m. for the purpose of setting a trial date.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: April 11, 2011